United States District Court
Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    CARLOS DIAZ,                              Case No.  25-cv-03327-EMC

8                 Plaintiff,

9           v.                                 **ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANT'S
10   CHEVRON CORPORATION, et al.,              MOTION FOR SUMMARY
                                               JUDGMENT; AND GRANTING IN
11               Defendants.                   PART AND DENYING IN PART
                                               PLAINTIFF'S MOTION FOR
12                                             SUMMARY JUDGMENT**

13                                             Docket Nos. 27, 30

14

15          Plaintiff Carlos Diaz initiated this wage-and-hour lawsuit in state court back in 2020.

16   Three companies were named as defendants: Chevron, Nooter,[1] and Contra Costa Electric

17   ("CCE").  The case was litigated in state court for approximately five years.  During that time, Mr.

18   Diaz settled his claims against Chevron and Nooter.  Thus, at this juncture, the only remaining

19   defendant is CCE.  In April 2025, CCE removed the instant case from state to federal court.  The

20   Court allowed the removal to stand because Mr. Diaz did not move for a remand based on

21   untimeliness (*i.e.*, the Court could not sua sponte remand based on a nonjurisdictional defect).

22   Now pending before the Court are cross-motions for partial summary judgment.  The motions are

23   targeted at only one of the claims brought by Mr. Diaz, specifically, his claim for violation of the

24   California Private Attorneys General Act ("PAGA").

25          Having considered the parties' briefs and accompanying submissions, as well as the oral

26   argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part each party's motion.

27

28   _____
     [1] Technically, two different Nooter entities were sued.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    FACTUAL & PROCEDURAL BACKGROUND

CCE is an electrical construction firm.  *See* Church Decl. ¶ 4.  According to Mr. Diaz, he was a CCE employee and, in conjunction with that employment, worked at a Chevron refinery. *See* FAC ¶¶ 15-16.  CCE had its employees work at two different Chevron refineries: one in Richmond, California, and the other in El Segundo, California.  Mr. Diaz worked at the Richmond refinery, from approximately October 2018 to January 2019.  *See* FAC ¶ 8.

According to Mr. Diaz, CCE violated California wage-and-hour law primarily because it failed to pay him and others similarly situated for all hours worked.  Mr. Diaz maintains that CCE failed to pay him and others similarly situated for employer-mandated travel – *i.e.*, the time they spent traveling between the refinery parking lot/entrance and the actual worksite within the refinery – both at the beginning of the day and at the end of the day (the reverse route).  Mr. Diaz also asserts that, at the end of the day, if they arrived at the parking lot before the end of the shift time and left the parking lot, their pay would be docked.  *See* FAC ¶¶ 2, 33-36.  The following is a summary of Mr. Diaz's allegations of unlawful conduct as alleged in this suit:

(a)    Defendants' policy and practice of failing to compensate Plaintiff and Employees for all hours worked at the start of their workdays, starting from the time Defendants required Plaintiff and Employees to report to designated parking lots for employer-mandated travel to their worksites;

(b)    Defendants' policy and practice of not compensating Plaintiff and Employees for all hours worked at the end of their workdays, including through the time Plaintiff and Employees were able to depart after employer-mandated travel from their worksites back to designated parking lots;

(c)    When Plaintiff and Employees left early from designated parking lots, Defendants' policy and practice of docking their pay in increments of time that exceeded the amount of time that Plaintiff and Employees left early from work . . . .

FAC ¶ 2.

Among the causes of action pled in the operative first amended complaint ("FAC") is a violation of PAGA.  This claim allows Mr. Diaz to seek relief on behalf of others besides himself – both those who worked at the Richmond refinery (as Mr. Diaz did) and those who worked at the El Segundo refinery.  In his PAGA notice and original complaint, Mr. Diaz mentioned expressly

2

United States District Court
Northern District of California

1   the Richmond refinery.  In his FAC, he added allegations about the El Segundo refinery.  Chevron

2   (prior to settling with Mr. Diaz) moved to strike the allegations related to the El Segundo refinery,

3   arguing that such allegations were outside the scope of the PAGA notice.  The state court rejected

4   that argument.  *See* Elster Decl., Ex. 10 (Order at 2) ("The fact that plaintiff's LWDA notice

5   happens to reference works at the Richmond refinery [specifically] does not preclude plaintiff

6   from representing similarly situated workers at the El Segundo refinery.").

7          In the pending motions for partial summary judgment, the parties seek clarity as to which

8   allegedly aggrieved CCE employees are entitled to PAGA relief.

**II.      DISCUSSION**

A.     Legal Standard

11         Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment

12  [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

13  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is

14  genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.

15  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a

16  scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

17  reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

18  must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

19  are to be drawn in the nonmovant's favor.  *See id.* at 255.

20         Where a defendant moves for summary judgment based on a claim for which the plaintiff

21  bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a

22  showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

23  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

24         Where a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for

25  which it has the burden of proof), it "must prove each element essential of the claims . . . by

26  undisputed facts."  *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992); *see also*

27  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (stating that, "if the movant bears

28  the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting

3

1    an affirmative defense, he must establish beyond peradventure all of the essential elements of the

2    claim or defense to warrant judgment in his favor") (emphasis omitted).

3    B.    California Labor Code § 2699.6

4           As a general matter, the right to file a PAGA suit cannot be waived by contract.  However,

5    there is a provision in the Act – § 2699.6 – that "exempts construction workers from PAGA if a

6    [collective bargaining agreement] covers wages, hours and working conditions and (1) has a

7    grievance and arbitration procedure to redress Labor Code violations; (2) clearly waives PAGA;

8    and (3) authorizes the arbitrator to award all remedies available under the Labor Code." *Oswald v.*

9    *Murray Plumbing & Heating Corp.*, 82 Cal. App. 5th 938, 941 (2022).  The relevant text from §

10    2699.6 is provided below:

> (a)    This part [*i.e.*, Part 13 which consists of PAGA] shall not apply to an employee in the construction industry with respect to work performed under a valid collective bargaining agreement that expressly provides for the wages, hours of work, and working conditions of employees, premium wage rates for all overtime hours worked, and for the employee to receive a regular hourly pay rate of not less than 30 percent more than the state minimum wage rate, and the agreement does all of the following:
>
>     (1)    Prohibits all of the violations of this code that would be redressable pursuant to this part and provides for a grievance and binding arbitration procedure to redress those violations.
>
>     (2)    Expressly waives the requirements of this part in clear and unambiguous terms.
>
>     (3)    Authorizes the arbitrator to award any and all remedies otherwise available under this code, provided that nothing in this section authorizes the award of penalties under this part that would be payable to the Labor and Workforce Development Agency.
>
>     . . . .
>
> (c)    For purposes of this section, "employee in the construction industry" means an employee performing work associated with construction, including work involving alteration, demolition, building, excavation, renovation, remodeling, maintenance, improvement, repair work, and any other work as described by Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and other similar or related occupations or trades

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    Cal. Lab. Code 2699.6.

2         In the instant case, CCE relies on § 2699.6 to argue that some of the allegedly aggrieved

3    employees are barred from getting relief under PAGA because they are subject to CBAs that meet

4    the statutory criteria.  CCE cites to CBAs for three different unions:

5         • The Inside Wiremen's Agreements between **Local Union 11** IBEW and the Los

6              Angeles County Chapter National Electrical Contractors Association.  *See* Mot. at

7              14 (asserting that some of the CCE employees at the El Segundo refinery are

8              covered by two CBAs, one covering the period 2019-2022 and the other 2023-

9              2026); Church Decl., Exs. A-B (CBAs).

10        • The CBAs for the Plumbers, Steamfitters & Refrigeration Fitters, U.A. **Local**

11             **Union 342**.  *See* Mot. at 15 (asserting that some of the CCE employees at the

12             Richmond refinery are covered by three CBAs: "one from July 1, 2018, through

13             June 30, 2021[;] one from July 1, 2021, through June 30, 2024[;] and a third from

14             July 1, 2024, through June 30, 2027"); Church Decl., Exs. C-D (CBAs).[2]

15        • The Pipe Trades Master Agreement for the UA District Council 16, including

16             **Local 250**.  *See* Mot. at 16 (asserting that some of the CCE employees at the El

17             Segundo refinery are covered by the CBA, effective July 1, 2017); Church Decl.,

18             Ex. E (CBA).

19        In response, Mr. Diaz argues that CCE has waived the right to invoke § 2699.6 because it

20   litigated for years in state court (*e.g.*, engaging in discovery and motion practice) but did not bring

21   up the statute until now.  Mr. Diaz also argues that, even if there is no waiver, there is one

22   statutory criterion that has not been met.  Specifically, he argues that the CBAs do not "prohibit[]

23

24   [2] CCE provided copies of only the last two CBAs (covering the periods July 1, 2021-June 30,
     2024, and July 1, 2024-June 30, 2027).  It did not provide a copy of the first CBA (covering the
25   period July 1, 2018-June 30, 2021).  As a result, Mr. Diaz argues in his sur-reply that there is no
     basis for arbitration for any employees who worked before July 2021 (including himself).  *See*
26   Sur-Reply at 1 (arguing that, at the very least, CCE's reliance on § 2699.6 has no application to
     employees who worked prior to July 2021).  The Court need not address this argument because, as
27   discussed below, Mr. Diaz has a stronger argument – *i.e.*, that CCE has waived the right to rely on
     § 2699.6.
28

1     all of the violations of this code that would be redressable" under PAGA, Cal. Lab. Code §

2     2699.6(a)(1)."[3]  Opp'n at 10.

3          The Court agrees with Mr. Diaz that there has been waiver (and therefore does not address

4     his second argument).  Waiver in the situation before the Court has two components: (1) did CCE

5     waive its right to rely on § 2699.6, and (2) did CCE waive its right to arbitration?

6          1.     Waiver of Right to Rely on § 2699.6

7          With respect to the first issue, there is no dispute that CCE could waive its right to rely on

8     § 2699.6.  CCE has not argued, *e.g.*, that § 2699.6 is jurisdictional in nature.  *Cf. Redwood*

9     *Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477, 483 n.6 (9th Cir. 1990) (taking note of "'the

10    traditional rule that the parties cannot by consent, waiver or estoppel obtain federal subject matter

11    jurisdiction'"); *AP-Colton LLC v. Ohaeri*, 240 Cal. App. 4th 500, 507 (2015) (noting that

12    "'[s]ubject matter jurisdiction . . . cannot be conferred by waiver, consent, or estoppel'").  Waiver

13    of a substantive right under California law "means the intentional relinquishment or abandonment

14    of a known right": "[t] he intention may be express, based on the waiving party's words, *or*

15    implied, based on conduct that is so inconsistent with an intent to enforce the right as to induce a

16    reasonable belief that such right has been relinquished."  *Dones v. Life Ins. Co. of N. Am.*, 55 Cal.

17    App. 5th 665, 677-78 (2020) (internal quotation marks omitted; emphasis added).

18         Here, CCE did not expressly waive its right to invoke § 2699.6.  However, it implied

19    waived the right.[4]  As an initial matter, it is worth noting that, although CCE did mention § 2699.6

20    in its answer and amended answer, it was *not* in the context of making the argument it now makes

21    in the pending motion.  In its answer and amended answer, CCE asserted: "To the extent civil

22    penalties are sought pursuant to PAGA, such penalties would violate the Equal Protection Clause

23    of the United States and California Constitutions, as it arbitrarily and unjustly exempts some

24    employers to the exclusion of others.  *See* Cal. Lab. Code § 2699.6."  Diaz Decl., Ex. 6 (CCE's

25

26    [3] This is the only statutory criterion that Mr. Diaz has put at issue.  He has not made any other
      contention that any other criteria have not been met.

27    [4] At the hearing, CCE suggested that there could never ben an implied waiver until a final
28    judgment is reached in this case.  This is fundamentally at odds with the definition of implied
      waiver, noted above.

United States District Court
Northern District of California

1   Ans. ¶ 24); Diaz Decl., Ex. 7 (CCE's Am. Ans. ¶ 24).  CCE did not make any contention – as it

2   does now – that § 2699.6 precludes a PAGA claim from existing in the first instance (for those

3   employees covered by the statute and so long as the statutory criteria are met).

4         In any event, even if CCE did make, in one of its pleadings, an assertion along the lines of

5   the argument it now makes, it would fare no better.  CCE never *pursued* that assertion and

6   substantively litigated the case on the merits for years in state court for years without making

7   further mention of § 2699.6.  Although CCE tries to minimize the litigation that took place

8   (noting, *e.g.*, that there was a stay for a period of time), the record reflects that significant litigation

9   did take place, ranging from discovery, mediation, and a motion for summary adjudication.  The

10  fact that CCE never raised its § 2699.6 argument before the state court – though it could have been

11  raised through, *e.g.*, a motion for summary adjudication – is conduct so inconsistent with an intent

12  to enforce the right as to induce a reasonable belief that such right has been relinquished.  *See*

13  *Dones*, 55 Cal. App. 5th at 677-78.

14        CCE protests that the waiver analysis is misplaced because its argument is that there can be

15  no PAGA claim at all for those employees who meet the statutory criteria – *i.e.*, even if it waived

16  its right to bring up § 2699.6, the statute entirely forecloses employees who meet the statutory

17  criteria from having a PAGA claim at all.  CCE focuses on the language in § 2699.6 that PAGA

18  "shall not *apply* to an employee in the construction industry with respect to work performed under

19  a valid bargaining agreement . . . ."  Cal. Lab. Code § 2699.6(a) (emphasis added).  According to

20  CCE:

21            Section 2699.6 precludes a PAGA claim in the first instance for
              certain construction employees, by carving them out of the PAGA's
22            reach entirely. . . .

23            . . . [T]he actual question is not whether these PAGA claims could
              have been or can be arbitrated, but whether these PAGA claims even
24            **existed** to be arbitrated: Section 2699.6 says they do not exist when
              its elements are satisfied.  Thus, there can be no "waiver" by CCE to
25            compel arbitration of a PAGA claim where that claim does not exist
              . . . .
26

27  Reply at 5 (emphasis added).

28        The parties spend some time disputing whether should be treated, in the context of waiver,

7

1    as excluding certain construction employees entirely from PAGA or as a form of statutorily

2    prescribed arbitration in lieu of PAGA judicial remedies.  But that dispute is a re herring.  Waiver

3    obtains under either standard.  As noted above, general waiver standards apply since § 2699.6 is

4    not jurisdiction and is thus waivable if not timely asserted by the employer.  And as noted below,

5    viewed as an arbitration clause, waiver obtains thereof as well.

6          As a matter of statutory construction as informed by public policy, sanctioning CCE's

7    conduct in this litigation would undermine the overall statutory scheme embodied by PAGA and §

8    2699.6 CCE's interpretation allowing it to assert § 2699.6 at this juncture is problematic because it

9    could encourage forum shopping.  A defendant could do what CCE did here – *i.e.*, test the waters

10   of a PAGA claim in litigation, and then, if rulings are not to the defendant's liking, move to

11   dismiss the PAGA claim on the basis that a judicial forum is foreclosed by § 2699.6.[5]  Also, the

12   benefit of the grievance/arbitration process integral to § 2699.6 – the section does not merely

13   exempt covered construction workers from PAGA, it does so in favor of grievance and arbitration

14   processes prescribed in the collective bargaining agreements – would be negated: permitting

15   extensive litigation in court before invoking arbitration undermines the advantageous nature of the

16   faster, less expensive, and less burdensome arbitration process.

17          The entire point of PAGA is to protect the rights of employees.  If an employer sits on its

18   rights and does not promptly seek an arbitral forum for the underlying Labor Code violations, then

19   the employee should be allowed to litigate a PAGA claim as the parties have done here for years

20   before CCE sought to invoke § 2699.6.

21          2.      Waiver of Right to Arbitration

22          CCE waived not only the right to invoke § 2699.6 but also waived the right to seek

23   arbitration.  *See Hill v. Xerox Bus. Sers., LLC*, 59 F.4th 457, 460 (9th Cir. 2023) (stating that the

24   "rule of waiver of the right to arbitrate . . . is nothing more than the general rule of waiver of a

25

26   _____

27   [5] As indicated above, the state court rejected an argument made by a different defendant –
     Chevron – that the PAGA claim should be limited to the Richmond factory.  That ruling, however,
     clearly impacted CCE.  The state court also rejected CCE's contention (during summary

28   adjudication proceedings) that the settlement of a different case, *Clayborne*, obviated the instant
     case.

United States District Court
Northern District of California

1    contractual right: a party waives its right to compel arbitration when (1) it has knowledge of the

2    right, and (2) it acts inconsistently with that right"). CCE did, in its original and amended

3    answers, raise the right to compel arbitration as an affirmative defense. *See* Diaz Decl., Exs. 6-7

4    (CCE's Ans. and Am. Ans.) (in second affirmative defense, asserting that "[t]he [operative]

5    Complaint is barred because Plaintiff's claims, or a portion thereof, is subject to mandatory and

6    final arbitration under the CBA"). But similar to above, CCE never pursued that defense in its

7    litigation before the state court for five  years – thus forsaking the purported benefits of the

8    alternative arbitral forum. It has acted "inconsistently with that right" to arbitrate.

9    C.    Scope of PAGA Notice and/or FAC

10    According to CCE, even if the Court rejects its argument above, there is an independent

11    reason some employees are not entitled to PAGA relief. Specifically, CCE contends that some

12    employees cannot obtain any relief under PAGA because they were never – in the first place –

13    "subject to the allegedly violative practices underpinning Plaintiff's PAGA claim." Mot. at 17;

14    *see also* Mot. at 18 ("If an employee was not subject to the alleged violations for which penalties

15    are sought, that employee is not 'aggrieved' and no penalty can be sought on their behalf.").

16    Essentially, CCE's argument here is that Mr. Diaz can represent in this PAGA action only those

17    who were allegedly exposed to specific practices expressly identified in the notice. This was an

18    issue that was being teed up for the state court when CCE removed before the state court could

19    decide the issue. *See* Opp'n at 8-9.

20    In evaluating CCE's argument, the Court first takes note of the following:

21    • The El Segundo refinery has an entrance gate for employees referred to as **Gate**

22    **10A**.

23    • The Richmond refinery has two primary entrances for employees: **Gate 91** and

24    **Kellum**.

25    In his PAGA notice, Mr. Diaz claimed:

26    Defendants fail to compensate employees for employer-mandated
travel time from employer-controlled parking lots to work site (e.g.,

27    at Chevron's Richmond refinery). Defendants require Mr. Diaz and
other employees at the [relevant] refinery to report at specific times

28    to designated parking lots that Chevron owns or controls, including

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

> the Gate 91 lot and the Kellum lot, and further require employees to be transported via buses that Chevron owns or controls to the work site each day.  Defendants then fail to pay Mr. Diaz and other similarly aggrieved employees for all such employer-mandated travel time at the beginning of each work day. . . .

4    Cogbill Decl., Ex. A (PAGA notice).  According to CCE, it only required employees to "report at

5    specific times" to a "designated parking lot[]" for the Kellum entrance (and only for certain

6    periods of time).  It never imposed such a requirement for the Gate 91 and Gate 10A entrances;

7    thus, those employees entering through those gates are not covered by the PAGA notice and

8    cannot be represented herein.

9           In response, Mr. Diaz contends that CCE is fixating too narrowly on certain language in

10   his PAGA notice – ignoring the broader point asserted in the notice that CCE "require[s]

11   employees to be transported via buses that Chevron owns or controls to the work site each day"

12   (*i.e.*, "employer-mandated travel time").  The fact that employees do not get on the bus *in the*

13   *parking lot – i.e.*, they get on the bus *after* they enter through the gate – is not the central point.

14   What the notice illustrated was that an employee cannot get to the actual work site without first

15   taking the company bus to get to that site.  *See* Elster Decl., Ex. 4 (CCE document related to

16   parking) (stating that "[a]ll contractors [*i.e.*, employees] accessing refinery via Gate 91 parking lot

17   will be picked up by their respective companies for dispersion to assigned work locations"); *see*

18   *also* Diaz Decl. ¶ 6 (testifying that "CCE would not begin paying us until the precise start time of

19   the daily safety meeting at our worksites within Chevron's refinery . . . , which means CCE did

20   not pay us beginning with the time we badged in (passed through the turnstiles or were swiped on

21   a bus), waited to board a vehicle, were transported by a vehicle to our worksite within the refinery,

22   put on PPE at the worksite, and then waited for the start time of the daily safety meeting at our

23   worksites").  The gravamen of the complaint asserted in the PAGA notice was that workers were

24   not compensated for time they spent under the control of the company – when they were engaged

25   in employer-mandated travel.

26          The Court finds Mr. Diaz's position more convincing.  As the state court noted when

27   confronted with the question of whether Mr. Diaz's PAGA notice limited the case to only the

28   Richmond factory, a PAGA notice is not required to include every potential fact or theory.  *See*

United States District Court
Northern District of California

1    *Rojas-Cifuentes v. Superior Court*, 58 Cal. App. 5th 1051, 1059 (2020) (noting that, although

2    plaintiff's "'facts and theories' . . . did not *exhaustively* explain why [defendant's] wage

3    statements were inadequate," they sufficiently notified defendant and the LWDA "of the general

4    basis for this claim") (emphasis added).

5            The evident purpose of the notice requirement is [simply] to afford
         the relevant state agency, the Labor and Workforce Development
6        Agency, the opportunity to decide whether to allocate scarce
         resources to an investigation, a decision better made with knowledge
7        of the allegations an aggrieved employee is making and any basis
         for those allegations.  Notice to the employer serves the purpose of
8        allowing the employer to submit a response to the agency, again
         thereby promoting an informed agency decision as to whether to
9        allocate resources toward an investigation.

10   *Williams v. Superior Ct.*, 3 Cal. 5th 531, 545-46 (2017) (adding that, in light of these purposes,

11   there is no requirement that allegations in a PAGA notice "already be backed by some particular

12   quantum of admissible proof"); *see also Bowen v. Target Corp.*, No. EDCV 16-2587 JGB

13   (MRWx), 2020 WL 1931278, at *4 (C.D. Cal. Jan. 24, 2020) (stating that "a PAGA notice is

14   factually sufficient if it notices the LWDA of a potential investigation and permits an employer to

15   determine whether to 'fold or fight'").  As one district court has noted, it would be "absurd" and

16   would "undermine the principles of PAGA" to bind a plaintiff to the facts and theories "exactly as

17   laid out" in the PAGA notice.  *Mays v. Wal-Mart Stores, Inc.*, 354 F.Supp.3d 1136, 1148 (C.D.

18   Cal. 2019) (internal quotation marks omitted).  This is especially true since "PAGA notices

19   necessarily precede the commencement of litigation and discovery."  *Bowen v. Target Corp.*, 2020

20   WL 1931278, at *5; *cf. Ibarra v. Chuy & Sons Labor, Inc.*, 102 Cal. App. 5th 874, 885 (2024)

21   (stating that "'we see nothing in section 2699.3 suggesting that factual allegations in PAGA

22   notices must exceed those normally found sufficient in complaints'").

23           Here, Mr. Diaz's PAGA notice did specifically mention employees being required to

24   report to a parking lot at a specific time.  But he also clearly implicated the broader practice of

25   failing to compensate for "employer-mandated travel time."  CCE's attempt to limit such

26   employer-mandated travel time as travel time from a parking lot to a work site while excluding

27   travel time from inside the entrance gate to the work site (*e.g.*, via a company bus) is inconsistent

28   with the liberal treatment that should be afforded PAGA notices.  The LDWA and CCE were put

United States District Court
Northern District of California

1    on sufficiently clear notice that Mr. Diaz was asserting that failure to compensate workers for time

2    spent during any employer-mandated travel violated California labor law.[6]

3           That being said, to the extent Mr. Diaz now argues that failure to compensate for time

4    spent donning and doffing protective gear or equipment is also part of this civil lawsuit, the Court

5    rejects that contention.  The subject of the PAGA notice is clearly employer-mandated *travel* time.

6    Failure to compensate for travel time is markedly different from failure to compensate for time

7    donning or doffing.  There is also no apparent reason why Mr. Diaz did not mention, or could not

8    have mentioned, donning or doffing in his PAGA notice and the notice was insufficient in regard

9    thereto.  *Compare Olson v. Tesoro Ref. & Mktg. Co.*, No. C06-1311RSL, 2007 U.S. Dist. LEXIS

10   67747, at \*2 (W.D. Wash. Sept. 12, 2007) (taking note of plaintiffs' allegation that employer

11   "permitted . . . workers [at a refinery] to perform unpaid pre-shift work routines, including

12   donning personal protective gear, gathering equipment and tools, and traveling to their work

13   sites"); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 323 (E.D. Penn. 2012) (taking note of release of

14   following claims by plaintiff: "failure to pay wages and overtime for all required work time,

15   including but not limited to, time spent clearing a security checkpoint at the beginning of each

16   work shift, engaged off site and off-the-clock while 'on call,' donning and doffing personal

17   protective equipment, obtaining and storing work tools, traveling to and from assigned work sites .

18   . . , preparing and cleaning work equipment and engaging in required shift change briefings with

19   co-workers"); *Jones v. CertifiedSafety, Inc.*, No. 17-cv-02229-RS, 2017 U.S. Dist. LEXIS 233226,

20   at \*5 (N.D. Cal. Aug. 28, 2017) (discussing allegations by safety attendants and oil drilling

21   platforms that they, *inter alia*, "were required to park and don their protective gear at a lot several

22   miles from the job site" and "then took a shuttle provided by [the defendant] to the site").  *See*

23   *generally Wyatt v. City of Burlingame*, No. 16-cv-02681-DMR, 2017 U.S. Dist. LEIS 20175, at

24   \*24, 29 (N.D. Cal. Feb. 13, 2017) (Title VII claim dismissed for failure to exhaust administrative

25

26   ───────────────
     [6] As noted above, the state court in this case also ruled in favor of Mr. Diaz when addressing
     Chevron's contention that the PAGA notice should be confined to only the Richmond refinery.
27   *See* Elster Decl., Ex. 10 (Order at 2) ("The fact that plaintiff's LWDA notice happens to reference
     works at the Richmond refinery [specifically] does not preclude plaintiff from representing
28   similarly situated workers at the El Segundo refinery.").  CCE does not focus its current objection
     on this point.

1   remedies "where the factual allegations in the EEOC charge bear no reasonable relationship to the

2   claims in [the] plaintiff's complaint" and "would not have reasonably led to an investigation of

3   those claims"; holding that plaintiff failed to exhaust claims for wrongful termination on the basis

4   of national origin even though EEOC charge described national origin-based harassment –

5   "[w]hen a plaintiff's charge is 'very specific,' courts have been reluctant to construe a charge as

6   including additional claims").

### III.    CONCLUSION

8        For the foregoing reasons, the Court grants in part and denies in part each party's motion

9   for summary judgment.  The Court rejects CCE's contention that some of the allegedly aggrieved

10  employees' claims are barred by § 2699.6.  The Court also rejects CCE's argument that the scope

11  of the PAGA notice is limited to only employees who were required to report to parking lots at

12  specific times.  The PAGA notice extends more broadly to uncompensated employer-mandated

13  travel time.  However, the Court rejects Mr. Diaz's contention that his PAGA notice fairly

14  implicates conduct distinct from failure to compensate for travel time – specifically, failure to

15  compensate for time spent donning or doffing protective gear or equipment.

16       This order disposes of Docket Nos. 27 and 30.

18  **IT IS SO ORDERED**.

20  Dated: December 15, 2025

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

13